FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JAN 17 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAVID POWELL,

                Plaintiff,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-----------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**
17-CV-05360 (AMD)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff seeks review of the Social Security Commissioner's decision that the plaintiff was not disabled for the purposes of receiving disability insurance benefits under Title II of the Social Security Act ("SSA"). For the reasons set forth below, I remand the case for further proceedings.

In February 2012,[1] the plaintiff was diagnosed with stage III chronic kidney disease, with pre-existing conditions that included diabetes type II, diabetic retinopathy, and hypertension. (Tr. 17-18, 331-33.) By May 2012, the plaintiff's chronic kidney disease had progressed to stage IV (Tr. 338-39), and by July 2014, the disease was considered to be "end-stage" (Tr. 518.) At that point, the plaintiff's condition required hemodialysis three times per week and his treating physician, Dr. Victoria Bellot, recommended that he receive a kidney transplant. (*Id.*)

The plaintiff filed his application for disability and disability insurance benefits on March 14, 2014, alleging disability beginning January 1, 2010. (Tr. 13.) The plaintiff's claim

---

[1] It appears that there are no medical records for the plaintiff between January 1, 2010, and January 24, 2012.

1

for benefits was denied on May 21, 2014. (Tr. 13.) The plaintiff filed a written request for a hearing on July 1, 2014, pursuant to 20 C.F.R. § 404.929. (*Id.*) On June 14, 2016, Administrative Law Judge ("ALJ") Dennis G. Katz held a video hearing, but adjourned the hearing so that the plaintiff could obtain representation. (*Id.*) The plaintiff then appeared with counsel for a hearing before ALJ Katz on August 25, 2016. (*Id.*) During the hearing, the plaintiff's lawyer notified ALJ Katz that certain medical records were missing and that she would try to obtain them, but asked that the SSA issue a subpoena if she could not get the records. (Tr. 35-36.) There was no expert medical testimony at the hearing. ALJ Katz said that he would hold a supplemental hearing to call a medical expert if the plaintiff's lawyer could not get a treating physician's medical opinion on the debilitating nature of diabetes. (Tr. 40.) A vocational expert was available via telephone but did not testify. (*Id.*) The ALJ did not hold a supplemental hearing.

On November 4, 2016, ALJ Katz issued a written decision finding that the plaintiff was "not disabled" before the date he was last insured (the "DLI"), which was December 31, 2011. (Tr. 21.) The Appeals Council denied the plaintiff's request for review on June 30, 2017, and the ALJ's decision became the final decision in this matter. (Tr. 1-5.) The plaintiff filed the complaint on September 1, 2017, and the defendant moved for a judgment on the pleadings on March 9, 2018. (ECF Nos. 1,14.)[2]

## DISCUSSION

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)

---

[2] The plaintiff did not file an opposition to the defendant's motion, even though I granted him multiple extensions to do so. As of December 7, 2018, I considered the defendant's motion fully briefed.

2

(quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The Court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case," the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (internal citations omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

*Disability Prior to the DLI*

ALJ Katz found that the plaintiff did not have a diagnosed disability before his December 31, 2011 DLI, when the coverage period for his SSA insurance ended. He also found that the plaintiff's individual illnesses – his Type II diabetes, diabetic nephropathy, hypertension, and chronic kidney disease – did not meet or medically equal a listing under 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15-17.) ALJ Katz concluded that the record did "not contain

specific medical documentation" of any condition that would meet or equal a listing before December 31, 2011. (*Id.*) As I explain below, remand is necessary so that the ALJ can reevaluate the evidence of the combination of the plaintiff's serious medical impairments.

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," he must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1." 20 C.F.R. § 404.1520(a). If the plaintiff has multiple impairments, the ALJ should consider "the combined effect of all [] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity...throughout the disability determination process." 20 C.F.R. § 404.1523; *see also Duncan v. Astrue*, No. 09–CV–4462, 2011 WL 1748549, at *22 (E.D.N.Y. May 6, 2011) (quoting *Burgin v. Astrue*, 348 F. App'x 646, 647–48 (2d Cir. 2009)); *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 185 (E.D.N.Y. 2011) ("The ALJ's failure to consider the effects of plaintiff's combined impairments in every step of the five–step sequential process . . . requires remand.").

ALJ Katz considered whether each of the plaintiff's illnesses met listings 6.03 or 6.05, which describe the different levels of severity of chronic kidney disease. ALJ Katz decided that none of the plaintiff's impairments met or equaled the relevant listing, but did not consider whether the impairments in combination were "medically equivalent" to a listed impairment. *See* 20 C.F.R. § 404.1526. The SSA discusses genitourinary disorders in two sections under category 6.00: in section D(1), "The listed disorders are only examples of common genitourinary disorders that we consider severe enough to prevent you from doing any gainful activity," and in D(2), "If you have a severe medically determinable impairment(s) that does not meet a listing, we will determine whether your impairment(s) medically equals a listing." ALJ Katz did not consider whether the plaintiff's serious, end-stage chronic kidney disease must have medically

equaled a listing before December 31, 2011. He also found "no listings that are directly applicable to" the plaintiff's diabetes and hypertension. (Tr. 17.) On remand, the ALJ should determine whether the plaintiff's severe impairments are medically equivalent to a listed impairment and whether the combination of these impairments medically equals a listing. *See* 20 C.F.R. § 404.1523; *Duncan v. Astrue*, 2011 WL 1748549, at *22; *Hernandez v. Astrue*, 814 F. Supp. 2d at 185.

*The Gap in the Record Before December 31, 2011*

The record before ALJ Katz did not include medical records from before December 31, 2011. Because these records might change ALJ Katz's evaluation of the plaintiff's medical history, remand is necessary.

When there is a gap in the record, the Commissioner has an affirmative duty to seek additional evidence. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (the Commissioner has an affirmative duty to seek out additional evidence where there are gaps in the administrative record) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from Dr. Jobson *sua sponte*.")). When the plaintiff has a progressive disease and it is difficult to determine the onset of the disease, SSR 18-01p provides:

> If there is information in the claim(s) file that suggests that additional medical evidence relevant to the period at issue is available, we will assist with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence. We may consider evidence from other non-medical sources such as the claimant's family, friends, or former employers, if we cannot obtain additional medical evidence or it does not exist (e.g., the evidence was never created or was destroyed), and we cannot reasonably infer the date that the claimant first met the statutory definition of disability based on the medical evidence in the file.

ALJ Katz acknowledged that the record did not include medical records from before February 2012, making it difficult to determine how severe the plaintiff's impairments were before December 31, 2011. (Tr. 16-20.) He also recognized that the "chronic and progressive [] nature" of the plaintiff's illnesses "support[ed] a finding that they existed (to some extent) prior to that date." (Tr. 16.). Nevertheless, it does not appear that ALJ Katz sought to fill the gap in the medical record. Nor does the record show that the SSA subpoenaed the plaintiff's treating physicians.

The plaintiff stopped working in 2009 because of his health[3] and on January 1, 2011, reported to the SSA that his condition had become severe enough to keep him from working. (Tr. 226.) The plaintiff testified that he was having vision problems, hypertension, and that his "diabetes was really out of control" as early as January 1, 2010. (Tr. 41.) The ALJ should have filled the gap in the record, especially because the plaintiff represented that his severe impairments began well before December 31, 2011.

Moreover, ALJ Katz mentioned holding a supplemental hearing for medical expert testimony about whether the plaintiff's impairments qualified as a disability prior to December 31, 2011[4] (Tr. 40), but never did so. Dr. Bellot, the plaintiff's treating physician in February 2012, opined that the plaintiff's disability started as early as 2004 or 2005. (Tr. 518.) The ALJ gave little weight to this opinion (Tr. 19-20), but in view of the gap in the record, the ALJ should reevaluate his conclusion and consider whether the record should include another medical expert's opinion.

---

[3] The ALJ noted that the plaintiff stopped working "due to what he termed a 'relocation issue.'" (Tr. 19.) However, in his SSA-3368, the plaintiff wrote that he stopped working because of his "condition(s)" *and* because of a "relocation issue." (Tr. 226.)

[4] While seeking a medical expert's input is discretionary, *see* SSR 18-01p, it would have been helpful here, particularly in light of the gap in the record.

6

*The Treating Physician Rule*

ALJ Katz determined that the plaintiff had a residual functional capacity ("RFC") to "perform the full range of light work," and was capable of performing his past job as a phlebotomist. (Tr. 17-20.) The ALJ decided that the opinions of Dr. Bellot and Dr. Lin, the plaintiff's two treating physicians, were "not entitled to significant evidentiary weight" (Tr. 20), and that "the record is devoid of any opinions regarding the nature and extent of the functional limitations imposed by the claimant's impairments from his alleged onset date through the date last insured" (Tr. 19). Because the record contradicts these findings, remand is necessary.

The "treating physician" rule requires that "a treating source's opinion on the issue(s) of the nature and severity" of a claimant's impairment be given "controlling weight" if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2) and *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). When the ALJ does not give a treating physician's opinion controlling weight, he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal citations omitted). The failure to give "good reasons" for the weight assigned to a treating physician's opinion constitutes a ground for remand. *See* 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion."); *Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted).

7

ALJ Katz's decision to give the plaintiff's treating physicians' opinions little weight was premised on his conclusion that they began treating the plaintiff after the DLI. "While both Drs. Bellot and Lin are treating sources, they did not begin treating the claimant until calendar year 2014. Accordingly, the undersigned has determined that their opinions are not entitled to significant evidentiary weight in that they do not address the claimant's medical condition or her [sic] limitations in physical function during the period at issue." (Tr. 19-20.) The record shows, however, that Dr. Bellot began treating the plaintiff in February 2012, only two months after the plaintiff's DLI. (Tr. 331-32.) As ALJ Katz noted, the plaintiff's impairments – diabetes and chronic kidney disease – are progressive and would have been consistent over a span of two months. The ALJ should reexamine Dr. Bellot's treatment record and reconsider whether Dr. Bellot's opinion – which was directly relevant to the plaintiff's RFC – deserved little weight. *See, e.g. Rosa,* 168 F.3d at 79 ("Accordingly, we find nothing so 'overwhelmingly compelling' in the ALJ's critique of Dr. Ergas's findings as to permit the Commissioner to 'overcome' an otherwise valid medical opinion.") (internal citations omitted); *Said v. Colvin,* No. 14-CV-03514, 2016 WL 8671843, at *12 (E.D.N.Y. Sept. 30, 2016).

ALJ Katz also observed that "the record is devoid of any opinions regarding the nature and extent of the functional limitations imposed by the claimant's impairments from his alleged onset date through the date last insured." (Tr. 19.) To the extent that the record is unclear, the Commissioner "ha[d] an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis." *Craig v. Comm'r of Soc. Sec.,* 218 F. Supp. 3d 249, 262 (S.D.N.Y. 2016) (internal citations omitted). "The 'treating physician rule' is inextricably linked to a broader duty to develop the record." *Craig,* 218 F. Supp. 3d at 262. While Dr. Bellot did not issue a written opinion about the plaintiff's condition before December

8

31, 2011, she did opine in July 2014 that the plaintiff was severely limited: "unable to walk for prolonged periods of time…cannot stand for more than 5 minutes…unable to work for the next 12 months due to end stage kidney disease," and that the plaintiff's kidney disease had begun in 2004 or 2005. (Tr. 518.) Dr. Bellot's opinion about the plaintiff's RFC just two months before her first examination would have filled the gap in the record.

## CONCLUSION

The defendant's motion for judgment on the pleadings is denied and the case is remanded.

**SO ORDERED.**

                                       s/Ann M. Donnelly
                                       _____
                                       Ann M. Donnelly
                                       United States District Judge

Dated: Brooklyn, New York
        January 16, 2019